## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

ARIKA REED                                  CIVIL ACTION

VERSUS                                      NO. 20-384-WBV-KWR

ROYAL SONESTA INC., ET AL.                  SECTION: D (4)

## ORDER AND REASONS

Before the Court is Defendant Royal Sonesta Inc.'s Motion to Dismiss Complaint and Compel Arbitration.[1]  The Motion is opposed,[2] and Defendants have filed a Reply.[3]  After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

On February 4, 2020, plaintiff, Arika Reed, filed a Complaint in this Court against her former employer, Royal Sonesta, Inc., and her former supervisor, Kenneth Jackson (collectively, "Defendants"), asserting claims for unlawful employment discrimination, harassment and retaliation under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, as well as claims for intentional discrimination in employment under La. R.S. 23:332 and intentional infliction of emotional distress

---

[1] R. Doc. 9.  The Court notes that although the title of the Motion suggests that it was only filed by defendant, Royal Sonesta Inc., it is clear from the memorandum in support that the Motion was filed by defendants, Royal Sonesta, Inc. and Kenneth Jackson.  R. Doc. 9-1 at p. 4.
[2] R. Doc. 15.
[3] R. Doc. 19.

under La. Civ. Code art. 2315.[4]  Plaintiff alleges that she was employed with Royal Sonesta, Inc. for 13 years and was the head of housekeeping at the time of her constructive discharge on October 5, 2019.[5]  Plaintiff asserts that in August 2019, Royal Sonesta, Inc. implemented a Performance Improvement Plan ("PIP"), after eight months of harassment from her supervisor, Kenneth Jackson, regarding her allegedly poor work performance.[6]  Plaintiff claims the harassment began in January 2019, shortly after Jackson was hired and after Plaintiff made several complaints about her working conditions.[7]  Plaintiff alleges that the harassment included requirements to keep Jackson updated on every aspect of her day-to-day work, copy Jackson on all emails, ensure Jackson was present for all meetings that Plaintiff conducted with her staff, and -accusations by Jackson that Plaintiff was trying to undermine him.[8]

Plaintiff asserts that she was placed on the PIP in August 2019 despite not receiving any progressive discipline from Royal Sonesta, Inc., and that the areas that allegedly needed improvement were things outside of her control.[9]  Plaintiff asserts that she had to 60 days from the PIP to improve those areas or face possible termination.[10]  Plaintiff alleges that Royal Sonesta, Inc. implemented the PIP to ensure she could not be successful in her job and in an effort to force Plaintiff to quit

---

[4] R. Doc. 1.
[5] *Id.* at pp. 2-3.
[6] *Id.* at p. 2.
[7] *Id.*
[8] *Id.* at p. 5.
[9] *Id.*
[10] *Id.*

or to terminate her.[11]  Plaintiff asserts that she began to suffer from severe emotional distress and began to see a therapist, but ultimately resigned after 10 months because her work environment became too hostile to tolerate.[12]  As a result, Plaintiff filed this suit, asserting claims under federal and state law for employment discrimination, harassment, retaliation and intentional infliction of emotional distress.[13]

On March 25, 2020, Defendants filed the instant Motion, asserting that this matter should be dismissed under Fed. R. Civ. P. 12(b)(6) and referred to arbitration because Plaintiff entered into a binding arbitration agreement that encompasses the claims raised in her Complaint.[14]  Defendants assert that Plaintiff was employed by Sonesta International Hotels Corporation (hereafter, "Sonesta"), from approximately April 2004 until November 2008, and again from July 2010 until she resigned on September 20, 2019.[15]  Defendants attached to their Motion an affidavit from Jennifer Rausch, the Vice President of Human Resources at Sonesta.[16]  Rausch states that in 2012, Sonesta introduced a new dispute resolution policy entitled, "Mutual Agreement to Resolve Disputes and Arbitrate Claims" (hereafter, the "Agreement"), which provided for resolution of employees' employment-related disputes with

---

[11] *Id.* at p. 6.
[12] *Id.*
[13] *Id.* at p. 6-10.
[14] R. Doc. 9.  In the Motion, Defendants assert that Plaintiff has improperly named Royal Sonesta Inc. as a defendant in this case, and that Defendants "know of no legal entity named 'Royal Sonesta Inc.'" R. Doc. 9 at p. 1, n.1.  Defendants assert that Plaintiff was employed at all relevant times by Sonesta International Hotels Corporation, which manages the Royal Sonesta New Orleans Hotel, and while all liability is denied, Sonesta International Hotels Corporation would be the only proper defendant for purposes of Plaintiff's employment-related claims.  *Id.*
[15] R. Doc. 9-1 at p. 6.
[16] R. Doc. 9-2 at pp. 2-4.

Sonesta through a grievance process and binding arbitration.[17]  Rausch declares that

existing employees  were allowed to opt-out of the Agreement by filling out a form

and sending it to Sonesta's Human Resources department in Massachusetts.[18]  The

Agreement provides the following:

> All Company employees are automatically covered by the grievance
> process explained in Section II(A) below by continuing a job with the
> Company unless they are qualified to opt out as described below.  That
> means that all employees agree, as a condition of employment, to
> arbitrate any and all disputes, including statutory and other claims, not
> resolved through the grievance process.  However, the company is
> electing to allow employees employed by the Company prior to the
> effective date of this Agreement to exclude themselves from the
> arbitration process by notice given to the Company within thirty (30)
> days after their receipt of a copy of this Agreement.  **ACCORDINGLY,
> UNLESS YOU EXCLUDE YOURSELF FROM THE
> ARBITRATION PROCESS BY MAILING TO THE COMPANY BY
> CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT
> REQUESTED, AN OPT OUT ELECTION FORM WITHIN SUCH
> THIRTY (30) DAY PERIOD, YOU WILL BE COVERED BY THIS
> AGREEMENT.**  The Opt Out Election Form is available by contacting
> a member of the Company's Human Resources Department, Two
> Newton Place, 255 Washington Street, Newton, MA 02458, telephone
> no. (617) 421-5400.  Whether you choose to remain covered by this
> Agreement or to exclude yourself has no negative effect on your
> employment.
>
> . . . .
>
> Unless you elect to exclude yourself from this Agreement, this

---

[17] *Id.*
[18] *Id.* at pp. 2-3.

Agreement is effective as of the date written above and applies to claims which are asserted on or after that date.[19]

Rausch declares in her affidavit that Plaintiff did not opt out of the Agreement, and instead signed and returned the Receipt and Acknowledgment Form, which is attached to Rausch's affidavit.[20]  The Receipt and Acknowledgment Form signed by Plaintiff on May 19, 2012, provides the following:

### IMPORTANT NOTICE REGARDING YOUR EMPLOYMENT WITH SONESTA INTERNATIONAL HOTELS CORPORATION

### RECEIPT AND ACKNOWLEDGEMENT FORM

### YOU MUST CAREFULLY READ THE ATTACHED MUTUAL AGREEMENT TO RESOLVE DISPUTES AND ARBITRATE CLAIMS.

Sonesta International Hotels Corporation ("Sonesta") is introducing a new dispute resolution policy that will affect the way disputes in connection with your employment are resolved.  The attached Mutual Agreement to Resolve Disputes and Arbitrate Claims (the "Agreement") describes the new program in detail, including:

◦ Your and Sonesta's agreement to attempt to resolve grievances related to your employment through an informal grievance and dispute resolution process;

◦ Your and Sonesta's agreement to use binding arbitration, instead of a court action or jury trials, to resolve disputes related to your employment if the grievance is not satisfactorily resolved through the informational grievance and dispute resolution procedure;

◦ Your and Sonesta's agreement to pursue claims on an individual basis, and not through a class or collective action; and waiver of the right to bring, or be a party to, class or collective actions;

---

[19] R. Doc. 9-1 at p. 7 (*quoting* R. Doc. 9-2 at pp. 7 & 8).
[20] R. Doc. 9-1 at p. 3 (*citing* R. Doc. 9-2 at pp. 14-18).

◦ The benefits of individual dispute resolution, including potentially quicker resolution of disputes related to your employment, Sonesta's agreement not to use a lawyer in the proceedings if you choose not to use a lawyer, Sonesta's agreement to pay all filing costs associated with arbitration and Sonesta's agreement to waive any rights it might have to recover costs or fees from you; and

◦ Steps you must take if you wish to decline to participate in the new program.

**You should take the time to carefully review this important document. If you have any questions, please contact a member of the Human Resources team at . . . . You also have the right to ask a lawyer about the effect and meaning of the Agreement.**

I acknowledge receipt of the Mutual Agreement to Resolve Disputes and Arbitrate Claims[.][21]

Defendants also submitted an affidavit from Virginia Blake, who was the Director of Human Resources for Sonesta from 2005 to 2015.[22] Blake states that she and her staff were responsible for presenting the Agreement to all employees at Sonesta, and that she advised employees of their right to opt-out of the Agreement.[23] Blake also confirms that Plaintiff did not opt out, but instead signed and returned the Receipt and Acknowledgement Form.[24]

Relying upon the affidavits of Rausch and Blake, as well as the Receipt and Acknowledgment Form signed by Plaintiff, Defendants argue that Plaintiff did not opt out of the Agreement and, therefore, is bound by its terms. Defendants also point out that another section of this Court has reviewed the Agreement in a separate

---

[21] R. Doc. 9-2 at p. 14.
[22] *Id.* at pp. 22-23.
[23] *Id.*
[24] *Id.* at p. 23.

matter and, after a thorough analysis, found the Agreement at issue to be valid and enforceable, and granted a motion to compel the matter to arbitration.[25]

Defendants assert that, in determining whether to compel arbitration, courts must determine: (1) whether the parties agreed to arbitrate the dispute; and (2) whether any federal statute or policy renders the claims non-arbitrable.[26] Defendants contend that the first inquiry requires the Court to consider the following two factors: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute in question is covered by the valid agreement.[27]  Defendants argue that a valid arbitration agreement exists because Plaintiff agreed to arbitrate her employment claims when she accepted continued employment with Sonesta in 2012 and signed the Agreement.[28]  Defendants assert that all of Plaintiff's claims fall within the scope of the Agreement because the Agreement states that it applies to, "any and all disputes, claims or controversies arising out of your employment or the termination of your employment," specifically, "including, but not limited to, claims under . . . Title VII of the Civil Rights Act of 1964 . . . state and local anti-discrimination laws; and any other federal, state, or local law, ordinance or regulation, and claims . . . ."[29]

Turning to the second inquiry, Defendants assert that Plaintiff's claims are not rendered non-arbitrable by any federal statute or policy, and that it is well settled

---

[25] R. Doc. 9-1 at pp. 5 & 13 (*citing* R. Doc. 9-3).
[26] R. Doc. 9-1 at p. 9 (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)) (internal quotation marks omitted).
[27] R. Doc. 9-1 at pp. 9-10 (citing *Will-Drill Res., Inc.*, 352 F.3d at 214).
[28] R. Doc. 9-1 at p. 10 (citing *Velazquez v. Brand Energy & Infrastructure Serv. Inc.*, 781 F. Supp. 2d 370, 376 (W.D. La. 2011)).
[29] R. Doc. 9-1 at p. 11 (*quoting* R. Doc. 9-2 at p. 7) (internal quotation marks omitted).

that agreements to arbitrate employment-related disputes are enforceable.[30]
Defendants claim that, to the extent Plaintiff challenges the enforceability of the
Agreement, the Agreement specifically provides that an arbitrator will decide any
questions regarding the enforceability of the Agreement.[31]   Finally, Defendants
contend that, while it is well settled that a court may stay an action while an issue is
arbitrated, the Fifth Circuit has held that a court may dismiss, rather than stay, an
action when all of the claims are properly subject to arbitration.[32]   Because all of
Plaintiff's claims are subject to arbitration under the Agreement, Defendants argue
dismissal of this action is appropriate.

Plaintiff opposes the Motion, asserting that although she signed the
Agreement, the Agreement is invalid due to the restrictions it places on discovery.[33]
Plaintiff asserts that Part VI of the Agreement, entitled "Rules of Arbitration,"
provides the following:

> It will not be necessary to conduct pre-hearing discovery, but either you
> or the company may do so.  If either party elects to conduct pre-hearing
> discovery, each party shall be allowed only up to five (5) interrogatories,
> including subparts, five (5) requests for production, including subparts
> and two (2) depositions.  Electronic discovery will be limited to searches
> of e-mail accounts of no more than two (2) address for [a] twelve-month
> period (or any shorter period for which e-mails are retained in the

---

[30] R. Doc. 9-1 at p. 11 (citations omitted).
[31] R. Doc. 9-1 at p. 12 (*quoting* R. Doc. 9-2 at p. 9) (internal quotation marks omitted).
[32] R. Doc. 9-1 at p. 12 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).
[33] R. Doc. 15.

ordinary course) and a maximum of five (5) search terms or phrases will be permissible.[34]

Plaintiff argues that, while the Federal Arbitration Act allows the parties to enter into a binding arbitration agreement, "it is unfair and unconscionable to require a party to agree to an arbitration agreement with rules that so severely limit the ability to ascertain and acquire the much-needed information to prove its case."[35] Acknowledging that an arbitration process is not required and/or expected to offer the same procedures and safeguards as a trial court, Plaintiff asserts that, "the process should not be so restrictive as to virtually eliminate one parties [sic] ability to prove their case."[36]   Plaintiff acknowledges that both parties are subject to the same rules and limitations, however, Plaintiff asserts they are not on equal footing in this case because most of the information that Plaintiff needs to prove her case is in the Defendants' possession.  Plaintiff argues that even the most artfully skilled attorney will be unable to draft discovery requests to obtain relevant information in only five interrogatories and requests for production (including subparts), two depositions and two email searches.[37]  Plaintiff asserts that Congress did not intend to allow for the resolution of disputes through an alternative process that severely restricts the ability of a plaintiff to obtain information needed to prove her claim.[38] Plaintiff argues that if this Court determines the Agreement is valid with these discovery limitations, she will be at a severe disadvantage.  As such, Plaintiff asks

---

[34] *Id*. at p. 2 (*quoting* R. Doc. 15-1).
[35] R. Doc. 15 at p. 2.
[36] *Id*.
[37] *Id*. at p.3.
[38] *Id*.

the Court to deny the instant Motion.  Alternatively, if the Court finds that the Agreement is valid, Plaintiff asks the Court to find the provisions regarding discovery invalid and to provide more extensive discovery than what the Agreement provides.[39]

In response, Defendants point out that Plaintiff's sole argument in opposition to the instant Motion, which is unsupported by jurisprudence, was addressed, and roundly rejected, by the United States Supreme Court 30 years ago.[40]  Defendants point out that Plaintiff admits in her Opposition brief that she executed the Receipt and Acknowledgment Form attached to the Agreement and that she did not opt-out of the Agreement, and Plaintiff does not assert that her claims fall outside the scope of the Agreement.[41]  Defendants then argue that the Supreme Court in *Gilmer* expressly rejected Plaintiff's argument that limits on discovery should prevent arbitration in a discrimination case.[42]  Defendants assert that the Fifth Circuit recently followed *Gilmer* in a case involving the Fair Labor Standards Act, *Carter v. Countrywide Credit Indus., Inc.*[43]  Defendants further assert that the applicable arbitration rules, those of National Arbitration and Mediation, specifically allow the arbitrator to permit additional discovery.[44]  Thus, Plaintiff can petition the arbitrator for additional discovery, if needed.[45]  To the extent Plaintiff challenges the enforceability or interpretation of the Agreement, Defendants assert that the

---

[39] *Id.*

[40] R. Doc. 19 at p. 1 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 1654-55, 114 L.Ed.2d 26 (1991)).

[41] R. Doc. 19 at p. 4.

[42] *Id.* at p. 5 (citing *Gilmer*, 500 U.S. at 31, 111 S.Ct. at 1654-55).

[43] R. Doc. 19 at p. 5 (citing *Carter*, 362 F.3d 294, 298-99 (5th Cir. 2004)).

[44] R. Doc. 19 at p. 5 (*citing* R. Doc. 19-1).

[45] R. Doc. 19 at p. 6.

Agreement provides that such issues will be decided by an arbitrator.[46]  For all of these reasons, Defendants assert that the Court should grant their Motion and compel arbitration.

## II.   LEGAL STANDARD

### A. Motion to Compel Arbitration

The Federal Arbitration Act, 9 U.S.C. §1, *et seq.* (the "FAA"), governs the enforceability of arbitration agreements in federal court.  According to the Supreme Court, the FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts[.]"[47]  The FAA provides that an arbitration agreement in writing "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[48]  "The underlying purpose of the FAA was to create a policy in favor of arbitration, such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[49]  The FAA provides that a party to an arbitration agreement "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[50]  The FAA further provides that, "[U]pon being satisfied that the issue involved in [a] suit

---

[46] *Id.* (*quoting* R. Doc. 9-2 at p. 9) (quotation marks omitted).
[47] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 1207, 163 L.ed.2d 1038 (2006).
[48] 9 U.S.C. § 2.
[49] *Iheanacho v. Air Liquide Large Industries U.S. L.P.*, Civ. A. No. 19-532-SDD-SDJ, 2020 WL 3451689, at *2 (M.D. La. June 24, 2020) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 360 (5th Cir. 2013)).
[50] 9 U.S.C. § 4.

or proceeding is referable to arbitration under such an agreement, [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."[51]  While a court may not deny a stay in such a situation, the Fifth Circuit has clarified that, "This rule, however, was not intended to limit dismissal of a case in the proper circumstances."[52]  The Fifth Circuit further held that, "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."[53]  Thus, a district court has discretion to dismiss the case when all of the claims asserted are subject to arbitration.[54]

Courts undertake a two-step inquiry in determining whether a party may be compelled to arbitrate.[55]  First, the court must determine whether the parties have an agreement to arbitrate the dispute at issue.[56]  Second, and only if the first inquiry is satisfied, the court must determine whether any federal statute or policy renders the claims nonarbitrable.[57]  "If the dispute is referred to arbitration, the FAA requires the court to stay or dismiss the proceedings,[58] and the Court 'shall make an order

---

[51] 9 U.S.C § 3.

[52] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

[53] *Id.* (citing *Sea-Land Service, Inc. v. Seal-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal); *Hoffman v. Fidelity and Deposit Co. of Maryland*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991)) (emphasis in original).

[54] *Alford*, 975 F.2d at 1164; *See Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999 (interpreting *Alford* to mean "district courts have discretion to dismiss cases in favor of arbitration").

[55] *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citation omitted).

[56] *Id.* (citation omitted).

[57] *Id.* (quotation and quotation marks omitted).

[58] *Iheanacho v. Air Liquide Large Industries U.S. L.P.*, Civ. A. No. 19-532-SDD-SDJ, 2020 WL 3451689, at *2 (M.D. La. June 24, 2020) (citing *Holts v. TNT Cable Contractors, Inc.*, Civ. A. No. 19-13546 2020 WL 1046337, at *2 (E.D. La. Mar. 4, 2020); *Alford*, 975 F.2d at 1164).

directing the parties to proceed to arbitration in accordance with the terms of the agreement.'"[59]

## III.   ANALYSIS

### A. The parties agreed to arbitrate the issues in dispute.

In determining the first prong, whether there is an agreement to arbitrate the dispute at issue, the Court must consider: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement.[60]   Ordinarily, the court determines both questions.[61]  However, "where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes."[62]

As explained by the Fifth Circuit, "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator.  Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues."[63]   The Fifth Circuit further explained that, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited: "It performs the first step—an  analysis of contract formation—as  it always does."[64]  If there is a valid arbitration agreement,

---

[59] *Iheanacho*, Civ. A. No. 19-532-SDD-SDJ, 2020 WL 3451689 at *2 (*citing* 9 U.S.C. § 4).

[60] *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (citing *Sherer*, 548 F.3d at 381).

[61] *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).

[62] *Kubala*, 830 F.3d at 201 (citation omitted).

[63] *Id.* at 202 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)).

[64] *Kubala*, 830 F.3d at 202.

the only question for the court is "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated."[65] The Fifth Circuit has instructed that, "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases."[66]

### 1. *The Agreement is a valid arbitration agreement.*

The Fifth Circuit has held that, "Because arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate."[67] Instead, ordinary state-law contract principles govern the inquiry of whether there is a valid agreement to arbitrate the claims.[68] Under Louisiana law, the formation of a valid contract requires: (1) capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful purpose.[69] Here, Plaintiff readily concedes that she signed the Receipt and Acknowledgment Form attached to the Agreement, that Defendants informed her that she could opt-out of the new dispute resolution policy, and that she did not elect to opt-out of the policy.[70] Thus, by signing the Agreement and continuing her employment with Sonesta in 2012, Plaintiff agreed to the terms of the Agreement, including arbitration of her employment claims.

---

[65] *Id.* (citation omitted).
[66] *Id.* (citations omitted).
[67] *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (quotation and citation omitted).
[68] *Id.* (citation omitted).
[69] La. Civ. Code arts. 1918, 1927, 1966 & 1971; *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 n.4 (5th Cir. 1996).
[70] R. Doc. 15 at pp. 1-2.

Plaintiff, however, argues that the Agreement is invalid because it "unfairly restricts her ability to conduct discovery in this matter and thereby limits her ability to prove her claim."[71]   As Defendants point out, however, Plaintiff cites no legal authority to support her assertion that "it is unfair and unconscionable to require a party to agree to an arbitration agreement with rules that so severely limit the ability to ascertain and acquire the much-needed information to prove its case."[72]   The Court also notes that the Agreement imposes the same discovery limits on both parties.   The Agreement further provides that, "The Company has selected National Arbitration and Mediation, Inc. ("NAM") to arbitrate all disputes under this Agreement."[73]   Rule 11(B)(3)(iii) of the National Arbitration and Mediation Employment Rules and Procedures states, "Upon the request of any Party and a showing of substantial need, the Arbitrator may permit additional discovery, but only if the Arbitrator finds that such additional discovery is not overly burdensome and will not unduly delay conclusion of the Arbitration."[74]

More importantly, however, the Fifth Circuit has expressly rejected Plaintiff's assertion that an arbitration agreement's limits on discovery deprive a plaintiff of her substantive rights.[75]   In *Carter v. Countrywide Credit Industries, Inc.*, the Fifth Circuit held, "[T]he Supreme Court considered and rejected a similar argument in *Gilmer*."[76]   The Fifth Circuit explained that the Supreme Court in *Gilmer*, "noted that

---

[71] *Id.* at p. 2.
[72] *Id.*
[73] R. Doc. 9-2 at p. 16.
[74] R. Doc. 19-1 at p. 9.
[75] *Carter v. Countrywide Credit Industries, Inc.*, 362 F.2d 294, 298 (5th Cir. 2004).
[76] *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

the mere fact that discovery in arbitration proceedings 'might not be as extensive as in federal courts' does not render those agreements invalid; by agreeing to arbitrate, a party simply 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'"[77]   The Fifth Circuit then concluded that, "Thus, a party seeking to have an arbitration agreement invalidated on this basis must show that the discovery provisions in question 'will prove insufficient to allow [FLSA] claimants . . . a fair opportunity to present their claims."[78]

As in *Carter*, there is no evidence in this case that the limits placed on discovery in the Agreement will prevent Plaintiff from presenting her employment discrimination, harassment and retaliation claims.   The Court notes that nothing in the Agreement prevents Plaintiff from requesting, and the arbitrator from allowing, additional discovery.[79]   Further, as noted above, Defendants have presented the Court with evidence suggesting that the applicable arbitration rules allow the arbitrator to permit additional discovery in this matter.[80]   The Court, therefore, rejects Plaintiff's argument that the Agreement is invalid due to fact that it places limits on the discovery that can be conducted during arbitration.   Accordingly, the Court concludes that the Agreement constitutes a valid arbitration agreement.

To the extent Plaintiff asks the Court to invalidate the Agreement's discovery limitations and put into place some other discovery process that allows for more

---

[77] *Carter*, 362 F.2d at 298 (quoting *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647).
[78] *Carter*, 362 F.2d at 298 (quoting *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647).
[79] R. Doc. 9-2 at pp. 14-18.
[80] R. Doc. 19 at pp. 5-6 (*citing* R. Doc. 19-1 at p. 9).

extensive discovery,[81] Plaintiff cites no legal authority that authorizes this Court to effectively rewrite the terms of a contract entered into between the parties. Additionally, the Supreme Court has held that the FAA "requires courts to stay litigation or arbitral claims pending arbitration of those claims in accordance with the terms of the agreement," and, "requires courts to compel arbitration in accordance with the terms of the agreement upon the motion of either party to the agreement (assuming that the making of the arbitration agreement or the failure . . . to perform the same is not at issue)."[82]  The Supreme Court then concluded that, "In light of these provisions, we have held that parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit *with whom* a party will arbitrate its disputes."[83]  As such, the Court declines Plaintiff's request to modify the Agreement with respect to the discovery limitations contained therein and agreed to by the parties.

### 2. Delegation clause

The Court further finds that the Agreement contains a valid delegation clause. "A delegation clause is a provision in an arbitration agreement that 'transfer[s] the power to decide threshold questions of arbitrability to the arbitrator.'"[84]  As explained by the Fifth Circuit, "The Supreme Court has recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed

---

[81] R. Doc. 15 at p. 3.
[82] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S.Ct. 1740, 1748, 179 L.Ed.2d 742 (2011) (*quoting* 9 U.S.C. §§ 3 & 4) (internal quotation marks omitted).
[83] *Concepcion*, 563 U.S. at 344, 131 S.Ct. at 1748 (internal citations omitted) (emphasis in original).
[84] *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016) (quoting *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)).

to arbitrate or whether their agreement covers a particular controversy."[85]   The Agreement in this case contains a delegation clause that provides, "All challenges to the interpretation or enforceability of any provision of this Agreement shall be brought before the arbitrator, and the arbitrator shall rule on all questions regarding the interpretation and enforceability of this Agreement."[86]   The Court agrees with Judge Lemmon's assessment of the same delegation clause in *Jolivette v. Royal Sonesta, Inc.*, Civ. A. No. 17-11039 (E.D. La. Mar. 15, 2018) (R. Doc. 23), wherein Judge Lemmon held that, "The aforementioned delegation clause clearly evinces an intent to have the arbitrator decide whether a given claim must be arbitrated by stating that the arbitrator shall decide all questions of interpretation or enforceability of any provision of the Agreement."[87]   As previously mentioned, the Fifth Circuit has instructed that, "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases."[88]   Because a valid delegation clause requires this Court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues,[89] the Court finds that this matter should be referred to arbitration, absent a federal statute or policy rendering the claims nonarbitrable.

---

[85] *Reyna*, 839 F.3d at 378 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010)).

[86] R. Doc. 9-2 at p. 9.

[87] *Jolivette v. Royal Sonesta, Inc.*, Civ. A. No. 17-11039 (E.D. La. Mar. 15, 2018) (R. Doc. 23 at p. 9).

[88] *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (citations omitted).

[89] *Id.* (citation omitted).

### B. No federal statute or policy renders Plaintiff's claims nonarbitrable.

Turning to the second inquiry in determining whether this matter should be compelled to arbitration, the Court finds that the parties have not identified a federal statute or policy that renders Plaintiff's claims nonarbitrable, and the Court knows of none. Accordingly, this matter must be referred to arbitration.

### C. Dismissal is appropriate in this case.

In their Motion, Defendants seek a dismissal of this case, rather than a stay, if the matter is referred to arbitration. Plaintiff does not address this request in her Opposition brief. The Court recognizes that under the FAA, a stay pending arbitration is mandatory upon a showing that the opposing party has commenced suit "upon any issue referable to arbitration under an agreement in writing for such arbitration . . . ."[90] The Fifth Circuit had specifically held that, while the court may not deny a stay in such situation, "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."[91] This Court has likewise recognized that, "This mandatory provision [9 U.S.C. § 3] calls for a stay *or dismissal* of the proceedings at the requires of a party if the dispute is referred to arbitration."[92]

---

[90] 9 U.S.C. § 3.
[91] *Alford v. Dean Witter Reynolds, Inc.*, 945 F.2d 1161, 1164 (5th Cir. 1992) (citing cases).
[92] *Holts v. TNT Cable Contractors, Inc.*, Civ. A. No. 19-13546, 2020 WL 1046337, at *2 (E.D. La. Mar. 4, 2020)).

In the Complaint, Plaintiff asserts claims for unlawful employment discrimination, harassment and retaliation under Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, as well as claims for intentional discrimination in employment under La. R.S. 23:332 and intentional infliction of emotional distress under La. Civ. Code art. 2315.[93]   By signing the Agreement in this case, Plaintiff agreed, "as a condition of employment, to arbitrate any and all disputes, including statutory and other claims, not resolved through the grievance process."[94]   The Agreement defines the term "claims" to include the following:

> [A]ny and all disputes, claims or controversies arising out of your employment or the termination of your employment which could be brought in court, including, but not limited to, claims under . . . Title VII of the Civil Rights Act of 1964 . . . Section 1981 through 1988 of Title 42 of the United States Code; state and local anti-discrimination laws; and any other federal, state, or local law, ordinance or regulation, and claims based on any public policy, contract, tort, or common law . . . .[95]

While the issue of arbitrability has been reserved to the arbitrator under the terms of the Agreement, it appears that all of Plaintiff's claims are covered by the Agreement. Plaintiff has alleged a claim under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, Louisiana's anti-discrimination laws, and Louisiana tort law.  As in *Alford v. Dean Witter Reynolds, Inc.*, because it appears that all of Plaintiff's claims must be referred to arbitration, retaining jurisdiction and staying this action will

---

[93] R. Doc. 1.
[94] R. Doc. 9-2 at p. 15.
[95] *Id.*

serve no purpose.[96]  As the Fifth Circuit explained in *Alford*, "Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law."[97]  Accordingly, the Court finds that it is appropriate to dismiss this case pending arbitration.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Royal Sonesta Inc.'s Motion to Dismiss Complaint and Compel Arbitration[98] is **GRANTED.**  This case is **DISMISSED WITH PREJUDICE** pending arbitration.

New Orleans, Louisiana, June 30, 2020.


**WENDY B. VITTER**
**United States District Judge**

---

[96] *Alford*, 975 F.2d at 1164 (quoting *Sea-Land Service, Inc. v. Sea-Land of P.R., Inc.,* 636 F. Supp. 750, 757 (D. Puerto Rico 1986)).
[97] *Alford*, 975 F.2d at 1164 (quoting *Sea-Land Service, Inc.,* 636 F. Supp. at 757).
[98] R. Doc. 39.